IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| US FOODS, INC., a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   25 C 12905 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| GSM WINGS LLC, a Texas limited liability | ) | |
| company, GSM WINGS II, LLC, a Texas limited | ) | |
| liability company, GSM WINGS III, LLC, a Texas | ) | |
| limited liability company, GSM WINGS IV, a | ) | |
| Texas limited liability company, GSM WINGS V, a | ) | |
| Texas limited liability company, GSM WINGS VI, | ) | |
| a Texas limited liability company, and SHAHEED | ) | |
| BAILEY, a New Jersey individual, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff US Foods, Inc. filed its complaint here against GSM Wings LLC, GSM Wings

II, LLC, GSM Wings III, LLC, GSM Wings IV, GSM Wings V, GSM Wings VI (collectively,

"restaurant defendants"), and Shaheed Bailey ("Bailey" and collectively with the restaurant

defendants, "defendants") on October 22, 2025, alleging that defendants owed millions of dollars

for failure to pay for produce sold under the Perishable Agricultural Commodities Act

("PACA"), 7 U.S.C. § 499(e), and for money owed under a promissory note and other

agreements.   The summons and complaint were served on all defendants on November 5, 2025.

After defendants failed to respond to the complaint or otherwise appear, the court entered a

default order against them on December 18, 2025, a copy of which was delivered to defendants

on December 30, 2025.   On January 23, 2026, plaintiff moved for default judgment, which was

delivered to defendant on January 28, 2026.   The court thereafter entered final default judgment

against defendants on January 30, 2026, in the amount of $3,199,109.50, plus post-judgment interest.

Three days later, on February 2, 2026, counsel for defendants filed an appearance in the case, and four days after that, defendants moved to vacate the default judgment under Fed. Rs. Civ. P. 55(c) and 60(b). Plaintiff opposes the motion. For the reasons below, the court denies defendants' motion to vacate.

## BACKGROUND

Plaintiff is a Delaware corporation with a principal place of business in Illinois. It is a food-service distributor. In a declaration filed with defendants' motion to vacate, defendant Bailey states that he resides in New Jersey and is a member and manager of the restaurant defendants, which he and his partner acquired in December 2024, and "which collectively . . . operate 17 restaurants" in Texas and employ roughly 500 people.

On October 22, 2025, plaintiff sued defendants for money owed under PACA and various agreements for food and food-related products and services. The complaint asserts nine counts: a claim against the restaurant defendants for $207,920.27 for "enforcement of PACA trust" (Count I); a claim against Bailey for $207,920.27 for unlawful dissipation of trust assets by an officer (Count II); a claim against the restaurant defendants for $839,002.46 for breach of contract related to an agreement (Count III); a claim "in the alternative to Count III" against the restaurant defendants for $839,002.46 for "account stated" (Count IV): a claim "in the alternative to Counts III and IV" against the restaurant defendants for $839,002.46 for unjust enrichment (Count V); a claim against all defendants for $1,114,149.95 for breach of contracts related to a promissory note (Count VI); a claim against Bailey for $1,114,149.95 for breach of contract

2

related to a guaranty (Count VII); a claim against the restaurant defendants for $1,098,903.55 for breach of contract related to a Master Distribution Agreement (Count VIII); and a claim "in the alternative to Count VIII" against the restaurant defendants for $1,098,903.55 for unjust enrichment (Count IX).

The summons and complaint were personally served on defendants on November 5, 2025. Defendants do not dispute this, and expressly admit that they were personally served in "November 2025," "by personal service on Bailey, individually and as agent for the" restaurant defendants. Bailey asserts that since acquiring the restaurant defendants, he has "worked with" plaintiff "to pay down the amounts owed by the" restaurant defendants, and that he "attempted to resolve" disputes with plaintiff. And "[a]t the time [he] received the lawsuit, [he] was still attempting to resolve the dispute directly with [plaintiff] and mistakenly thought that the lawsuit was just a negotiating tactic." He also explains that he has "never been involved in litigation previously and did not understand or appreciate the significance of the lawsuit and believed that the best way to try to resolve it was directly with" plaintiff. Nor did he "understand how or why [he] could be sued in Illinois when [he] live[s] in New Jersey or how the [restaurant] defendants could be sued in Illinois when they are all located in Texas."

On December 17, 2025, plaintiff moved for an order of default. It explained therein: that it was seeking a "total amount" of $3,052,055.96; that defendants had been served on November 5, 2025; that defendants had neither "filed an appearance [n]or a responsive pleading"; and that defendants had "not contacted" its "counsel for any purposes." The next day, the court entered default against defendants, directing plaintiff to serve defendants with a copy of the order, and setting a hearing for January 22, 2026. A copy of the order was delivered to defendants on

3

December 30, 2025. Bailey states that "[a]t some point in January," he "learned" of the default order, and "at that point," he "finally realized the seriousness of the situation."

On January 21, 2026, plaintiff filed a status report, in which it explained, among other things, that there had "been no settlement discussions since this lawsuit was filed," that plaintiff's counsel had "reached out to Defendant Bailey prior to filing this lawsuit and invited discussions to attempt to resolve this case," but that Bailey "did not respond."

On January 22, 2026, the court held a hearing, at which: no one appeared for defendants; plaintiff advised that it would file a motion for default judgment the next day; and the court set another hearing for February 3, 2026. The next day, on January 23, 2026, plaintiff moved for default judgment, which was delivered to defendant on January 28, 2026.

Bailey states that at some unspecified point before January 29, 2026, he "attempted to retain counsel to represent" defendants. But, he says, he "was unfamiliar with the process of retaining litigation counsel and the process took longer than [he] anticipated." Finally, on January 29, 2026, he "spoke with counsel at Tucker Ellis LLP in Chicago." And "on January 30, 2026, [he] formally engaged the firm to represent [defendants]."

That same day, January 30, 2026, the court granted plaintiff's motion for default judgment and entered final default judgment against defendants in the amount of $3,199,109.50, plus post-judgment interest. Bailey states that defendants' "intention was to file a motion to vacate the default order and to contest the lawsuit at" the February 3, 2026 hearing, "but while attempting to do so, [they] learned that the Court had entered a default judgment."

On February 2, 2026, counsel filed an appearance on behalf of defendants, and on February 6, 2026, filed defendants' motion to vacate. Attached to the motion are Bailey's

4

declaration and a copy of a proposed Answer to the complaint. Bailey states in his declaration that defendants "do not dispute that certain amounts are owed to" plaintiff, but do "dispute the amounts that [plaintiff] claim[s] are owed."

## DISCUSSION

Defendants move to vacate the default order and default judgment under Rule 55(c) and Rule 60(b). Rule 55(c) states that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Because defendants failed to file a Rule 55(c) motion to vacate the default order before the court entered default judgment, Rule 55(c)'s "good cause" standard has "expired" and "is now not relevant," and so defendants must rely on Rule 60(b). Cent. Illinois Carpenters Health & Welfare Tr. Fund v. Con-Tech Carpentry, LLC, 806 F.3d 935, 937 (7th Cir. 2015).

Rule 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    (1) mistake, inadvertence, surprise, or excusable neglect;

    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

    (4) the judgment is void;

    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

    (6) any other reason that justifies relief.

Defendants make clear in their reply brief that they are relying on Rule 60(b)(1). For the court to set aside the default judgment under Rule 60(b)(1), defendants must show three elements: good cause for the default, quick action to correct it, and a meritorious defense to the

5

underlying allegations.   Acosta v. DT & C Glob. Mgmt., LLC, 874 F.3d 557, 560 (7th Cir. 2017); Wehrs v. Wells, 688 F.3d 886, 890 (7th Cir. 2012).   Each element is mandatory, and so without a showing of "good cause" even a meritorious defense does not justify vacating the default judgment.   See Swaim v. Moltan Co., 73 F.3d 711, 722 (7th Cir. 1996) ("Moltan has not identified good cause for its default . . . . This lack of proof makes Moltan's quick action to cure the default immaterial and eliminates the need for us to address the question of its allegedly meritorious defenses."); Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc., 28 F.3d 42, 46 (7th Cir. 1994) ("Imperial failed to clear the first hurdle when it did not show good cause for its default.   This would have been sufficient basis to refuse to vacate Imperial's default, even if it had a meritorious defense.").

This three-element "standard was originally formulated to evaluate a district court's decision concerning a motion to vacate an *entry* of default under Rule 55(c) . . ., but was eventually applied to structure decisions involving motions to set aside default *judgments* under Rule 60(b)."   Jones v. Phipps, 39 F.3d 158, 162 (7th Cir. 1994) (emphasis in original) (citation omitted).   "While the tests are identical under either Rule 55(c) or Rule 60(b)," the "test under Rule 60(b) circumstances—where a default *judgment* has been entered—[is] much more limited and stringent."   Id. (emphasis in original); see also Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc., 961 F.3d 942, 948 (7th Cir. 2020) ("The Rule 60(b) standard is applied more stringently than the Rule 55(c) good cause standard." (cleaned up)).   That is because courts "interpret[ ] the three-part standard in light of the language of Rule 60(b)(1) which, by its very terms, establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to

6

justify disturbing a default judgment." Jones, 39 F.3d at 162; see also Wehrs, 688 F.3d at 890 ("Relief from a final judgment may be granted pursuant to Rule 60(b) under exceptional circumstances.").

And so, while the Seventh Circuit obviously "favor[s] trial on the merits over default," Cracco v. Vitran Exp., Inc., 559 F.3d 625, 631 (7th Cir. 2009), it has "long since moved away from the position of disfavoring default judgments," Pretzel & Stouffer, 28 F.3d at 47. In doing so, it has recognized the "strong" interests in not burdening court dockets, in the "legitimate reliance on the default by the nonmoving party," and in judges being "able to enforce deadlines." McMahon v. S&M Auto Brokers, Inc., No. 24 C 09660, 2025 WL 327825, at *2 (N.D. Ill. Jan. 29, 2025) (cleaned up) (citing Seventh Circuit cases). It has also "characterized the district court's considerable latitude in" deciding whether to vacate default judgment "as discretion piled on discretion." Wehrs, 688 F.3d at 890 (cleaned up).

Finally, given that the test under Rule 60(b)(1) is limited and stringent, it is unsurprising that "[t]he burden of proof rests on the party moving to vacate the judgment." Trade Well Int'l v. United Cent. Bank, 825 F.3d 854, 861 (7th Cir. 2016). The court finds that defendants have not met their burden here.

### Good Cause

Because the requirements under Rule 60(b)(1) for vacating default judgment "are steeper" than those under Rule 55(c) for vacating the entry of default, the "good cause" element of the test further "depends on excusable neglect." Con-Tech, 806 F.3d at 937. Or as the Jones court put it: "Rule 60(b)(1) and the standard for vacating default judgments requires that 'cause' for failure to respond be separated from 'good cause,' and 'neglect' of litigation from 'excusable

7

neglect'"—meaning "at least the absence of any willful disregard for duties, simple carelessness, or negligence." 39 F.3d at 164 (emphasis in original). Simply stated, to show "excusable neglect," defendants must show that their "actions leading to default were <u>not</u> willful, careless, or negligent." <u>Arwa</u>, 961 F.3d at 949 (emphasis added).

Defendants argue that they have done so here. According to defendants, they have "been candid with this Court in acknowledging that they were served with the summons and complaint in November 2025 . . . and that they did not immediately take action to defend the case for a variety of reasons." Those reasons, they argue, include: Bailey's "ongoing efforts to try to negotiate a resolution directly with [plaintiff] . . ."; Bailey's never having "previously been involved in litigation and [his failure to] understand the significance of it"; and Bailey's failure to "understand how [defendants] could be sued in Illinois when Bailey lived in New Jersey and the [restaurant defendants] were all in Texas." They also point out that Bailey was attempting to retain counsel to represent them, but he "was unfamiliar with the process," which "took longer than [he] anticipated." They assert, too, that "they were in the process of responding to the default order when the default judgment was entered." And they contend that they "now fully understand the consequences of their inaction, have learned their lesson," and so "respectfully request that their neglect in failing to timely respond be deemed excusable."

The problem for defendants is that their "conduct was not 'neglect' of any kind": they "made a *deliberate* decision to disregard the pending suit." <u>Con-Tech</u>, 806 F.3d at 937 (emphasis in original) (affirming denial of Rule 60(b) motion to vacate a default judgment).

8

Indeed, Bailey concedes that he knew of the lawsuit but consciously chose to ignore it. "No district judge has to put up with that, or excuse it in retrospect." Id.

None of Bailey's professed reasons for disregarding the case, moreover, are availing. As for his assertion that he was "still attempting to resolve the dispute directly with" plaintiff, that is no excuse here. As a legal matter, "[a] defendant can both file an answer and try to negotiate a settlement," but "doing the latter does not eliminate the need to do the former." Id. (explaining that district court did not abuse its discretion in rejecting defendant's argument "that [the defendant] had not ignored the suit but had instead started negotiating with plaintiffs' lawyers, seeking a satisfactory settlement"). Put simply, defendants "could have filed an answer and asked the district court to stay the litigation while the parties negotiated." Id. But what they could not do was "keep silent and hope that the equivalent of a stay would be afforded retroactively." Id.; see also Sony Interactive Ent. LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A", No. 25-CV-04642, 2026 WL 1180069, at *3 (N.D. Ill. Apr. 30, 2026) ("belief that a settlement with Sony was imminent" did not "excuse . . . neglect").

And as a factual matter, Bailey's conclusory and vague assertion that he was "attempting" to settle the case conflicts with plaintiff's assertion in its January 21, 2026 status report that there had "been no settlement discussions since this lawsuit was filed," that its counsel had "reached out to Defendant Bailey prior to filing this lawsuit and invited discussions to attempt to resolve this case" but that Bailey had "not respond[ed]." Defendants' reliance on alleged settlement talks to excuse their decision to disregard the lawsuit thus fails.

The same goes for their reliance on Bailey "mistakenly"—based on his alleged inexperience with litigation—thinking that the lawsuit was a non-serious "negotiating tactic."

Bailey owns and manages the restaurant defendants, which he says "collectively . . . operate 17 restaurants" and employ roughly 500 people.   This is not a mom-and-pop store.   It defies credibility that someone in that position would fail to appreciate the seriousness of a lawsuit filed in federal court.   Further undermining his avowed naivety is that: (1) he simultaneously claims to have had enough legal understanding to question whether defendants "could be sued in Illinois"; and (2) even after receiving notice of the default order—which plaintiff says was delivered to defendants on December 30, 2025, and which Bailey states he "learned" of "[a]t some point in January," making him "realize[ ] the seriousness of the situation"—defendants still did not immediately surface and explain the situation to the court or to opposing counsel. What's more, defendants ask the court to consider the size of the damages award in assessing their motion.   But that fact cuts against them here, and further calls into question Bailey's assertions.   That is because similar damages numbers were conspicuously alleged throughout the complaint, which should have clearly alerted defendants to the seriousness of the situation.

But even if Bailey were truly oblivious to the gravity of the situation, it would not matter: even "pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines."   Jones, 39 F.3d at 163 (affirming denial of motion to vacate default judgment); see also Travelodge Hotels, Inc. v. Taurus Hotels Corp., 179 F.R.D. 569, 571 (C.D. Ill. 1998) (denying motion to vacate default judgment and rejecting defendant's argument that he "mistakenly believed that his pro se entry of appearance would prevent a judgment from being issued against him" based on his alleged unfamiliarity "with the workings of [the] justice system," explaining that "even uncounseled litigants must act within the time provided by statute and rules" (cleaned up)); cf. Garcia v. Valet Parking Pro., LLC, No. 19-CV-00828, 2020 WL

733104, at *2 (N.D. Ill. Feb. 13, 2020) (denying motion to vacate default judgment where defendant's owner argued that "he did not have a realistic expectation as to the severity of the complaint").

Nor, finally, can defendants rely on Bailey's conclusory and vague assertion that he was attempting to retain litigation counsel. According to Bailey, he "was unfamiliar with the process of retaining litigation counsel and the process took longer than [he] anticipated." But "any difficulty" in "obtaining counsel does not constitute good cause for default." Travelodge Hotels, 179 F.R.D. at 572. This is "especially" so here, where defendants are a sophisticated business and, again, Bailey "did not make any effort to explain his situation to the Court or to opposing counsel." Id. For similar reasons, the assertion that defendants "were in the process of responding to the default order when the default judgment was entered" falls on deaf ears—they had plenty of time to contact the court before default judgment was entered.

In short, defendants have failed to show good cause or excusable neglect, and the court finds that they deliberately and willfully disregarded the litigation. This case thus stands in stark contrast to the cases defendants rely on. See, e.g., Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc., 856 F.2d 873, 880 (7th Cir. 1988) ("the record shows that Aakash had not been ignoring the litigation"); Bieganek v. Taylor, 801 F.2d 879, 882 (7th Cir. 1986) ("nothing in the record to show that Taylor deliberately and wilfully . . . disregarded the litigation").

Because defendants have failed to show good cause under Rule 60(b)(1), the court denies their motion to vacate the default judgment. See Con-Tech, 806 F.3d at 938 (affirming denial of motion to vacate default judgment without considering additional elements of swift action or

11

meritorious defenses where defendant failed to show excusable neglect); <u>Swaim</u>, 73 F.3d at 722 (failure to identify good cause "makes Moltan's quick action to cure the default immaterial and eliminates the need for us to address . . . allegedly meritorious defenses"); <u>Pretzel & Stouffer</u>, 28 F.3d at 46 (Imperial's failure "to clear the first ['good cause'] hurdle" "would have been sufficient basis to refuse to vacate Imperial's default, even if it had a meritorious defense").

<u>**CONCLUSION**</u>

For the above reasons, the court denies defendants' motion to vacate default order and default judgment under Rules 55(c) and 60(b) [28].

So ordered.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: July 14, 2026**

12